BEALES, J.,
dissenting.
I respectfully dissent. The statute says what the statute says. The General Assembly could have written the actual innocence statute to provide that a concession of fact by the Attorney General (or by the Commonwealth’s Attorney of the jurisdiction in which the petitioner was convicted) should receive considerable weight, beyond that of the victim’s own identification of the perpetrator—or even be binding on the Court. However, the General Assembly did not add or insert anything in this tightly written statute to allow this Court to grant the petition unless we can conclude—by clear and convincing evidence—that no rational factfinder in the Commonwealth of Virginia could decide that Mr. Haynesworth was guilty beyond a reasonable doubt of the offenses for which he had been convicted in M.A.’s case. Code § 19.2-327.13; see Code § 19.2-327.11(A).[9] And the same standard, of course, holds true in T.H.’s case.
*212 There is considerable case law in Virginia that makes clear that a defendant in a sexual assault case can be convicted by the factfinder solely on the testimony of the victim—and without any further corroboration. See Fisher v. Commonwealth, 228 Va. 296, 299, 821 S.E.2d 202, 204 (1984) (“The reason for the rule is the typically clandestine nature of the crime. There are seldom any witnesses to such an offense except the perpetrator and the victim. A requirement of corroboration would cause most sex offenses to go unpunished.”); see also, e.g., Nobrega v. Commonwealth, 271 Va. 508, 519, 628 S.E.2d 922, 927 (2006); Moore v. Commonwealth, 254 Va. 184, 186, 491 S.E.2d 789, 740 (1997); Snyder v. Commonwealth, 220 Va. 792, 796, 263 S.E.2d 55, 57 (1980); Poindexter v. Commonwealth, 213 Va. 212, 217, 191 S.E.2d 200, 204 (1972); Wilson v. Commonwealth, 46 Va.App. 73, 88, 615 S.E.2d 500, 507 (2005); Corvin v. Commonwealth, 13 Va.App. 296, 299, 411 S.E.2d 235, 237 (1991); Garland v. Commonwealth, 8 Va.App. 189, 191-93, 379 S.E.2d 146, 147 (1989). The Supreme Court of Virginia has explained, “it is clear that the victim’s testimony, if credible and accepted by the finder of fact, is sufficient evidence, standing alone, to support the conviction.” Fisher, 228 Va. at 299, 321 S.E.2d at 204.
In each of the two cases now before this Court involving Haynesworth, each victim has never wavered that Haynes-worth perpetrated the crimes against her. Nothing in the record before this Court indicates that either woman wavers at all now from her identification of him as the perpetrator. M.A. spent at least two hours with her assailant as he repeatedly sodomized and raped her. She described to the police a silver gun with which the assailant threatened her while sexually assaulting her—and a silver toy gun was found in Haynesworth’s bedroom when the police searched his house pursuant to a search warrant. M.A. testified in court at trial that this silver toy gun looked like the gun with which the perpetrator threatened her during his sexual assault of her. Unlike in the crimes involving Leon Davis, both M.A. and T.H. told the police that the perpetrator of the crimes against them *213 threatened them by brandishing a gun (albeit a different colored gun).
Furthermore, neither woman identified her perpetrator in the first or second photo array that the police showed her. M.A. only identified her attacker when shown the third photo array, when she selected Haynesworth’s photo. M.A. testified at trial that she “got a good look” at her assailant, who “was in my face, right, his face up in mine,” and she testified at trial that she had no question that Haynesworth was the assailant. Similarly, T.H. rejected all of the photos in the first two photo arrays she was shown. Haynesworth’s photo was included in the third photo array T.H. was shown, and T.H. testified, “As soon as I saw the picture, I picked him out, but I compared his picture to each picture to make sure it was the right one.” T.H. also identified Haynesworth as her assailant at trial.
Just because two other women apparently misidentified Haynesworth as the man who sexually assaulted them, when later DNA tests suggested that their attacker was instead Davis, does not somehow mean that M.A. and T.H. also mistakenly identified Haynesworth as their attacker. Both of these women, especially M.A., were with the assailant for a significant period of time, and the assailant’s face was not covered. Both M.A. and T.H. identified Haynesworth as the assailant. Speculation as to whether M.A. and T.H. misidentified Haynesworth simply is not the test. As noted, the statute requires this Court to find by clear and convincing evidence that NO rational factfinder could conclude that Haynesworth committed the repeated sexual assaults of M.A. or the abduction and attempted sexual assault of T.H. Code § 19.2-327.13(ii). This is a very high standard that neither Haynes-worth nor the Attorney General—despite their well-presented arguments—has reached.
This Court’s decision to grant a petition for a writ of actual innocence in Copeland v. Commonwealth, 52 Va.App. 529, 664 S.E.2d 528 (2008), dealt with a very different situation than this Court faces today. In Copeland, after Copeland’s conviction for possession of a firearm by a felon became final, a *214 forensic examination of the purported firearm by the Commonwealth plainly established that it was not a firearm at all. Id. at 530, 664 S.E.2d at 529; see Code § 18.2-308.2(A). Copeland then sought a writ of actual innocence from this Court. Given that the results of the forensic examination of Copeland’s purported firearm completely undermined the factual basis supporting his conviction for being a felon in possession of a firearm, this Court held that accepting the Attorney General’s concession was “prudent” under the particular circumstances of that case. Copeland, 52 Va.App. at 532, 664 S.E.2d at 530. Nothing even similar to that occurred in the cases involving Haynesworth that are before us today.
While I certainly laud the Attorney General and the two Commonwealth’s Attorneys involved in supporting Haynes-worth’s petitions in these cases for their clearly stated desire to promote justice,[10] their views of what they believe happened in these two cases do not overcome the clear, plain language of the actual innocence statute and what it requires. Even affording the views of these constitutional officers an appropriate amount of weight among the totality of the evidence before this Court in the exercise of its original jurisdiction, their views do not establish that NO rational factfinder could conclude that Haynesworth is guilty of abducting T.H.—and certainly fail to establish that no rational factfinder could conclude that Haynesworth is guilty of the series of sexual assaults of M.A. over a two-hour time period. As the other dissents note, while the actual innocence statute’s required threshold is not met here, that does not mean that a different result would not occur if clemency is sought from the executive branch. However, this Court and the judiciary simply do *215 not have the power to pardon—a power that resides only in the executive branch.
Because the statute must be applied as it is enacted, based on its plain language, I respectfully dissent and would not grant Haynesworth’s petitions for a writ of actual innocence.

. Among the pleading requirements of the actual innocence statute, Code § 19.2-327.11(A)(vii) requires the petitioner to present “previously unknown or unavailable evidence” that "is material and when considered with all of the other evidence in the current record, will prove that no rational trier of fact could have found” the petitioner guilty beyond a reasonable doubt. Code § 19.2-327.13(ii) authorizes this Court to grant a writ of actual innocence and vacate a conviction "only upon a finding that the petitioner has proven by clear and convincing evidence all of the allegations contained in clauses (iv) through (viii) of subsection A of § 19.2-327.11, and upon a finding that no rational trier of fact could have found proof of guilt beyond a reasonable doubt....”

. Each of these constitutional officers is "representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.” Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935). As "servant[s] of the law,” their "twofold aim” in the exercise of their duties “is that guilt shall not escape or innocence suffer.” Id.