# VIRGINIA:

*In the Court of Appeals of Virginia on* **Tuesday** *the* **17th** *day of* **December, 2013**.

Herbert W. Lux, Jr.,                                                                                                 Appellant,

 against            Record No. 1528-12-2
                       Circuit Court Nos. CR11-789 through CR11-791

Commonwealth of Virginia,                                                                                   Appellee.

From the Circuit Court of Spotsylvania County

Before Chief Judge Felton, Judge Kelsey and Senior Judge Bumgardner

The opinion issued in this case on December 10, 2013 incorporates by reference an opinion of this Court which has been withdrawn, and a corrected opinion has been issued this date, see Lux v. Commonwealth, Record No. 1476-12-4 (Va. Ct. App. Dec. 17, 2013).  Accordingly, the opinion in this case is likewise withdrawn, the mandate issued that date is vacated, and a corrected opinion is issued bearing today's date.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:    *original order signed by a deputy clerk of the*
       *Court of Appeals of Virginia at the direction*
       *of the Court*

Deputy Clerk

Present:   Chief Judge Felton, Judge Kelsey and Senior Judge Bumgardner
Argued at Richmond, Virginia


HERBERT W. LUX, JR.

MEMORANDUM OPINION[*] BY
v.      Record No. 1528-12-2                    CHIEF JUDGE WALTER S. FELTON, JR.
                                                              DECEMBER 17, 2013
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
Thomas S. Shadrick, Judge Designate

Herbert W. Lux, Jr., *pro se* (Price Koch; Spencer Mayoras Koch
Cornick & Meyer, PLC, on brief). [1]

Katherine Quinlan Adelfio, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] On July 29, 2013, appellant, by counsel, filed his opening brief to the Court.  On October 1, 2013, appellant, *pro se*, filed a "Motion to Dismiss/Reverse Convictions."  On October 3, 2013, appellant, *pro se*, filed a motion asking the Court to permit him to represent himself at oral argument.  On October 8, 2013, the date of oral argument, we engaged in a colloquy with appellant to determine whether his request to represent himself satisfied the standard articulated by Faretta v. California, 422 U.S. 806 (1975), and Edwards v. Commonwealth, 49 Va. App. 727, 644 S.E.2d 396 (2007).  We found that appellant's request to represent himself was timely; clear and unequivocal; and voluntarily, knowingly, and intelligently made.  Edwards, 49 Va. App. at 735, 644 S.E.2d at 399-400.  Accordingly, we permitted appellant to present oral argument on his behalf, with attorney G. Price Koch acting as standby counsel.

At the conclusion of oral argument, appellant asked the Court for leave to provide additional documents related to this appeal.  We granted appellant leave to provide additional documents to the clerk of the Court, to be added to the paperwork comprising the case file.  However, pursuant to Rules 5A:7, 5A:8, and 5A:19(c), governing the timely filing of documents, we are unable to consider appellant's untimely filed documentation as part of the record in this case.  On October 15, 2013, appellant presented additional paperwork to the clerk of the Court, which the clerk added to the case file.  On that date, appellant also presented a second *pro se* motion to dismiss and reverse his convictions.

After careful review, we deny appellant's motions, dated October 1, 2013 and October 15, 2013, to dismiss and reverse his convictions.

Herbert W. Lux, Jr. ("appellant") appeals from his convictions of obstruction of justice, in violation of Code § 18.2-460(A), and entering property for purposes of damaging it or interfering with the owner's use thereof, in violation of Code § 18.2-121, following a jury trial in the Spotsylvania County Circuit Court ("trial court").[2] He contends the trial court erred by denying his motions to strike the evidence and to set aside the jury's verdict. He asserts the evidence presented at trial was insufficient to support his convictions. He further contends that Thomas S. Shadrick, Judge Designate, erred by ruling that he was not required to retake the oath of office after being designated, pursuant to Code § 17.1-106(A), by the Chief Justice of the Virginia Supreme Court to preside over cases in the trial court.

## I. BACKGROUND

On January 31, 2011, appellant's son, Matthew T. Lux ("Matthew") was convicted of reckless handling of a firearm, in violation of Code § 18.2-56.1, following a jury trial in the Circuit Court of Spotsylvania County.

After Matthew's conviction and sentencing, appellant attempted to contact members of the jury from that trial. Several of the jurors notified the clerk of the Spotsylvania County Circuit Court to complain that appellant had visited them at their homes. These individuals also informed the clerk that they did not want to have any further contact with appellant.

The clerk reported the substance of the jurors' phone calls to Judge David H. Beck, who presided over Matthew's trial and sentencing. On March 3, 2011, Judge Beck entered an order, *sua sponte*, directing that all copies of the jury list from Matthew's trial be returned to the clerk of the

---

[2] Appellant was also convicted of common law contempt of court. On April 11, 2013 and June 18, 2013, this Court denied appellant's petition for appeal of his contempt conviction. Lux v. Commonwealth, No. 1528-12-2 (Va. Ct. App. Apr. 11, 2013, June 18, 2013).

court and placed under seal.[3]  The order also prohibited further unauthorized use of any of the jurors' personal contact information.  On March 3, 2011, Spotsylvania County Sheriff's Office Deputy K.M. Shanahan personally served appellant with a copy of the court order.[4]

On March 12, 2011, Sergeant B. Harvey of the Spotsylvania County Sheriff's Office was dispatched to a neighborhood in the county, following a complaint from a jury member from Matthew's trial, that appellant had appeared, uninvited, at the juror's home.  Sergeant Harvey located appellant in a grocery store parking lot near the juror's house, and asked him if he had visited the juror's home.  Appellant admitted that he had visited the juror's home.  Sergeant Harvey "advised [appellant] that he was no longer able to go to any juror's homes, and that if he did go to another juror's home that was on the [jury] list . . . he would be arrested for trespassing."  When Sergeant Harvey asked appellant if he understood her warning, he responded affirmatively.

---

[3] By order dated October 26, 2012, the Virginia Supreme Court refused appellant's petition for appeal of Judge Beck's order, holding "there [was] no reversible error in the judgment complained of."  Lux v. Commonwealth, No. 120761 (Va. Oct. 26, 2012).  Appellant's petition for rehearing was refused by order dated January 17, 2013.  Lux v. Commonwealth, No. 120761 (Va. Jan. 17, 2013).

[4] Appellant did not return a jury list to the clerk of the court as required by the court order.  However, he did deliver a letter to the clerk's office on the same day he received a copy of the order, asserting that Judge Beck did not have the authority to "direct me to turn over any information that I am able to find as a private citizen."  Commonwealth's Ex. 3.

- 3 -

The next day, March 13, 2011, appellant appeared, uninvited, at the home of A.B.[5] He backed his car into A.B.'s driveway and parked.[6] He traversed the walkway leading to her front door and rang the doorbell. A.B., aware that appellant was at her front door, refused to answer.[7] The sight of appellant "literally stopped [her] in [her] tracks . . . [because she] did not have any intention of making that meeting . . . in [her] home at that time." A.B. knew her husband was in the yard. She left the vicinity of the front door and momentarily saw him through a window, speaking with appellant. A.B. immediately telephoned the sheriff's office to report appellant's presence at her home.

Sergeant Harvey and Deputy M. Buccola arrived at A.B.'s home approximately ten minutes after A.B. placed her call. Sergeant Harvey asked appellant if he remembered speaking with her the previous day. He responded affirmatively. He admitted to Sergeant Harvey that he remembered her warning that she would arrest him if he visited another juror's property. Sergeant Harvey thereafter arrested appellant for trespassing.

At appellant's trial, B.B. testified that he was outside, working on his fence, when he saw appellant standing on his front sidewalk. Appellant approached B.B., introduced himself, and

---

[5] A.B. had served as a member of the jury at Matthew's trial. A.B. and her husband, B.B., had returned from vacation on March 8, 2011. Upon their return, they received a copy of Judge Beck's March 3, 2011 order that had been served on appellant. They also discovered that, during their absence, appellant left two voicemail messages on their home telephone answering machine. In his messages, appellant stated he was "doing a story on corruption in the county and wanted [A.B.'s] input and wanted to discuss a trial that [she] had been a juror on." A.B. did not return appellant's phone calls. Instead, she emailed the clerk of the court to report the substance of appellant's voicemails.

[6] We use A.B. and B.B., rather than the parties' names, in an effort to protect their privacy.

[7] A.B. knew that appellant was Matthew's father and the person who left the voicemail messages on her home answering machine because he had testified at Matthew's January 31, 2011 trial. A.B. recalled that, during his testimony, appellant became "loud and accusatory" toward the Commonwealth's Attorney. She testified that "[t]he Judge [in Matthew's case] tried to calm the behavior," but appellant continued to berate the prosecutor.

- 4 -

began to discuss Matthew's trial and the circumstances of Matthew's arrest. Appellant gave B.B. a flier that detailed appellant's assertions of police and prosecutorial misconduct surrounding his son's conviction. B.B. stated that their conversation was "businesslike."[8]

A.B. testified that appellant's presence at her home caused her to feel "apprehensive," "fearful," and "upset." She told the jury that appellant was not welcome at her home and that his arrival "disrupt[ed her] Sunday."

At trial, appellant challenged the authority of the Honorable Thomas S. Shadrick, a retired judge, to preside over his trial. Pursuant to Code § 17.1-106(A), the Chief Justice of the Supreme Court had previously designated Judge Shadrick to assume judicial duties in Spotsylvania County for a period not exceeding ninety days. However, appellant contended that Judge Shadrick lacked authority to preside over his trial because he had not retaken the required oath of office, pursuant to Code § 49-1, after being designated by the Chief Justice to assume judicial duties in Spotsylvania County.[9] Judge Shadrick, noting that he "ha[d] taken an oath of office," overruled appellant's objections.

---

[8] Appellant did not disclose to B.B. that he was recording their conversation by using a concealed recording device.

[9] Code § 49-1 provides, in pertinent part:

> Every person before entering upon the discharge of any function as an officer of this Commonwealth shall take and subscribe the following oath: "I do solemnly swear (or affirm) that I will support the Constitution of the United States, and the Constitution of the Commonwealth of Virginia, and that I will faithfully and impartially discharge all the duties incumbent upon me as . . . . . . . according to the best of my ability, (so help me God)."

## II. ANALYSIS[10]

### A. Interfering with Owner's Use of Property

Appellant contends that the evidence was insufficient to prove that he visited A.B.'s and B.B.'s property with the intent to interfere, hinder, or obstruct their affairs, in violation of Code § 18.2-121.

When addressing the sufficiency of the evidence, we "'presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without evidence to support it.'" Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002)).

Code § 18.2-121 provides, in pertinent part:

> It shall be unlawful for any person to enter the land, dwelling, outhouse or any other building of another for the purpose of damaging such property or any of the contents thereof or in any manner to interfere with the rights of the owner, user or the occupant thereof to use such property free from interference.

The trial court instructed the jury that, in order for it to convict appellant of violating Code § 18.2-121,

> [t]he Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:

---

[10] On brief, the Commonwealth asserted, *inter alia*, that this Court should affirm appellant's conviction of obstruction of justice, in violation of Code § 18.2-460(A). Subsequently, the Commonwealth filed a motion to permit it to withdraw its previously asserted argument related to appellant's obstruction of justice conviction. Motion to Withdraw Argument, Lux v. Commonwealth, No. 1528-12-2 (Va. Ct. App. Sept. 20, 2013). In its motion, the Commonwealth conceded that the evidence presented at trial was insufficient to support appellant's conviction of obstruction of justice, and asserted that appellant's conviction of that offense should be reversed. Although this Court "ha[s] no obligation to accept concessions of error," Copeland v. Commonwealth, 52 Va. App. 529, 531, 664 S.E.2d 528, 529 (2008), following a review of the trial court record, we agree with the Commonwealth that appellant's conviction of obstruction of justice was not established by the evidence presented at trial. Accordingly, we reverse appellant's conviction of obstruction of justice, in violation of Code § 18.2-460(A).

> 1. That the defendant willfully entered the land owned, used[,] or occupied by another; and
>
> 2. That the defendant entered the land for the purpose of damaging the property of the owner/occupant or interfering with the owner/occupant's right of free and peaceful use of his/her property.

"Intent is the purpose formed in a person's mind which may, and often must, be inferred from the facts and circumstances in a particular case. The state of mind [or criminal intent] of an alleged offender may be shown by his acts and conduct." Ridley v. Commonwealth, 219 Va. 834, 836, 252 S.E.2d 313, 314 (1979).

Here, the evidence presented at trial proved beyond a reasonable doubt that appellant persisted in contacting jurors from his son's trial, despite being ordered by the court not to do so, and despite being warned by Sergeant Harvey to cease such activities. The evidence proved that appellant called and left two voicemail messages for A.B., neither of which she returned. Undeterred by the court order or A.B.'s lack of response to his queries, appellant pursued his attempt to communicate with her by appearing, uninvited, and in direct violation of Judge Beck's order, at her home. When appellant did not receive a response at A.B.'s front door, he continued to search the property to locate her. When he located B.B., he interrupted B.B.'s yard work to engage him in an unsolicited conversation. Viewed in the light most favorable to the Commonwealth, the trier of fact could reasonably conclude from the evidence presented at trial that the purpose of appellant's unannounced visit to A.B.'s and B.B.'s home was to interfere with their peaceful use of their property. As this Court previously has held, "the privacy interest in one's home has few equals." Kyer v. Commonwealth, 45 Va. App. 473, 480, 612 S.E.2d 213, 217 (2005); see also Martin v. Moore, 263 Va. 640, 648, 561 S.E.2d 672, 677 (2002) ("Freedom from discomfort and annoyance while using land, which involves an element of personal tastes and sensibilities, is often as important to an individual as freedom from physical interruption in the use of the land." (discussing the use of land in the context of nuisance jurisprudence)).

Appellant contends that he enjoyed an "implied invitation" to enter A.B.'s and B.B.'s property in an attempt to contact them and that neither party rescinded this implied invitation by asking him to leave their property. Appellant's Br. at 6.

"It is generally recognized that, absent any affirmative attempts to discourage trespassers, owners or possessors of private property impliedly consent to have members of the general public intrude upon certain, limited areas of their property." Robinson v. Commonwealth, 47 Va. App. 533, 545, 625 S.E.2d 651, 657 (2006). "This invitation, where it exists, extends only to those areas of the property that would be used when approaching the residence in an ordinary attempt to speak with the occupants." Id. at 546, 625 S.E.2d at 657.

Appellant's contention that he enjoyed an implied invitation to visit A.B.'s property is unavailing for two reasons. First, the March 3, 2011 court order directed appellant to refrain from contacting jurors and to refrain from using jurors' personal contact information. The court order belied any reasonable reliance by appellant that A.B. impliedly consented to his presence on her property. Second, Code § 18.2-121 simply affords no protection to visitors or intruders under the implied consent doctrine when the purpose of the accused's visit is to damage the owners' property or to otherwise interfere with the owners' peaceful use of their property.[11]

Accordingly, the trial court did not err by refusing to set aside the jury's guilty verdict that appellant interfered with A.B.'s and B.B.'s use of their property, in violation of Code § 18.2-121.

---

[11] For a similar reason, appellant's argument that he engaged in protected political speech on A.B.'s property and that the trial court erred by refusing to set aside the jury's guilty verdict on this basis is unavailing. Under Code § 18.2-121, the content of the speech or the nature of the behavior of the accused is immaterial, so long as the purpose underlying the accused's actions is to interfere with the owner's peaceful use of his or her property.

### B.  Oath of Office

For the same reasons articulated in <u>Lux v. Commonwealth</u>, No. 1476-12-4 (Va. Ct. App. Dec. 17, 2013), we conclude that the trial court did not err when it ruled that Judge Shadrick, who took the oath of office at the commencement of his term of service to the Commonwealth, and whose oath of office continued in effect at the time of his retirement, was not required to retake the oath of office prior to presiding over appellant's trial.

### III.  CONCLUSION

For the foregoing reasons, we affirm in part and reverse in part the judgment of the trial court.

<u>Affirmed in part, and<br>reversed in part.</u>